UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------:
MARIA GOLODNER,                                       :
                                                      :
                            Plaintiff,                :
                                                      :          OPINION
             - against -                              :
                                                      :          05 Civ. 7895 (RLE)
QUESSANT INC. d/b/a CAFE CHARBON a/k/a                :
LE PICERIC CAFE CHARBON, et al.,                      :
                                                      :
                            Defendants.               :
------------------------------------------------------:

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiff, Maria Golodner ("Golodner"), filed this lawsuit against Quessant, Incorporated d/b/a Cafe Charbon and a/k/a Le Picieric Cafe Charbon ("Cafe Charbon"), Jeandidier Faure, Gilles Ray, and Olivee Herbert (collectively, "defendants"), on September 9, 2005. She raises claims of intentional infliction of emotional distress and false imprisonment, under the theory of respondeat superior; as well as a claim of negligence in hiring, retention, supervision and training. Her allegations arise out of an incident on November 21, 2004, in which she was sexually assaulted by an employee of Cafe Charbon. On July 12, 2006, the parties consented to jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

Pending before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants argue that the case should be dismissed on the grounds that: (1) defendants are not vicariously liable for the intentional torts of their employees, specifically false imprisonment and intentional infliction of emotional distress; (2) plaintiff has failed to allege a prima facie case for false imprisonment; (3) plaintiff has failed to

allege a prima facie case for intentional infliction of emotional distress; (4) plaintiff has failed to allege a prima facie case of negligence in hiring, firing, retention, and supervision, (5) the lawsuit against Ray is frivolous; and (6) punitive damages are not available to plaintiff. On the facts as set forth in this record and for the following reasons, defendants' motion is **GRANTED**.

## II. BACKGROUND

On November 21, 2004, at approximately 11:30 p.m., Golodner finished her bartending shift at John Luke, a Manhattan bar and restaurant. Deposition of Maria Golodner, June 14, 2006 ("Golodner Dep."), at 66. She had a glass of wine at John Luke, and then went to meet her boyfriend, Tomas Besnard ("Besnard"), at about midnight at the restaurant where he worked. Id. at 37, 57. At approximately 3:00 a.m. on November 22, Golodner, Besnard, and two of his friends arrived at Cafe Charbon, located on the corner of Orchard and Stanton Streets in Manhattan, to celebrate the birthday of Amelie Scribot ("Scribot"), an acquaintance of Besnard and the manager of Cafe Charbon. Id. at 34, 35, 42.

Scribot had been employed as a waitress by Cafe Charbon for three months before being promoted to manager. Deposition of Amelie Scribot, June 15, 2006 ("Scribot Dep."), at 7. As manager, she was responsible for closing the restaurant, answering the telephone, ordering beverages, and supervising bar and restaurant employees. Id. at 12-13. She held the position of manager for about six months, but was demoted by defendant Faure after the attack on Golodner. Id. at 11. On the night of the incident, Scribot was responsible for closing Cafe Charbon and had possession of the keys to the cafe. Id. at 14.

Cafe Charbon's facade includes several doors, but the main entrance is located on Orchard Street. Golodner Dep. at 40-41. This door is located under the "Tabac" sign, and is the

only door intended for customer ingress and egress. Faure Dep. at 68. When Golodner, Besnard and the others arrived, they entered through that door. Golodner Dep. at 44. Golodner testified that, at the time they entered Cafe Charbon, the bar and restaurant were open. **Id**. at 45. Scribot agreed that the cafe was open for business, and that the bar was serving drinks and charging regular prices. Scribot Dep. at 29. The restaurant remained open until its usual closing time of 12:00 a.m., but had closed by the time of the incident, and the chairs were on top of the tables and the lights were out in the restaurant area. **Id**. at 43-44. The bar stayed open until 1:00 a.m. **Id**. at 9.

When Golodner arrived at Cafe Charbon, there were about thirty to forty people at the bar. Golodner Dep. at 48. She had seen Scribot before, and knew the bartender, Christophe, but did not recognize anyone else in the bar. **Id**. at 36. Music was playing and people were dancing. **Id**. at 49, 54. Herberto Olivee ("Olivee"), a Cafe Charbon employee, was "DJing." **Id**. at 49-50. According to Golodner, she and Besnard remained at the bar for the entire evening. **Id**. at 45. Scribot claims, however, that Golodner and Besnard left Cafe Charbon at some point during the evening to attend another party, and then returned to the bar. Scribot Dep. at 47-48. Scribot stated that Golodner and Besnard exited through the front door, which was still unlocked at the time. **Id**. When they returned, they had to call Scribot so she could let them in because Scribot had locked the doors and closed the gates to ensure that she could control who entered the cafe. **Id**. at 47-49.

Golodner testified that at approximately 4:00 or 5:00 a.m., she decided that she wanted to leave the bar. Golodner Dep. at 53, 55. She told Besnard that she was tired and asked him to leave with her. **Id**. Besnard was not ready to leave, so Golodner decided to leave alone. **Id**. at

57. Golodner tried to exit through the main entrance, but it was locked. **Id**. at 57, 58. She turned to look for someone to assist her in opening the door and discovered that Olivee, one of Cafe Charbon's dishwashers, was standing behind her. **Id**. at 53, 58.

At the time, Golodner did not know that Olivee was employed by Cafe Charbon as a dishwasher, though she had seen him on two occasions earlier that night, once while he was DJing, and another time, drinking behind the bar. **Id**. at 49, 51, 52. Olivee was holding keys in his hand, and Golodner asked him to open the door for her. Golodner Dep. at 58. He told her that the door was locked and the gate was down, and that he could not open the door because he did not have the key. **Id**. at 59. He suggested that she follow him to another door. **Id**. at 59, 61-62.

Olivee led Golodner to a dark hallway. **Id**. at 63. Golodner became apprehensive, and was about to turn back when she saw a red illuminated exit sign. **Id**. She decided to continue to follow Olivee. **Id**. When they were near the exit, Olivee turned, grabbed Golodner, and put his mouth to her breast. **Id**. at 68. Golodner hit him and told him to get off her. **Id**. at 69. She turned to run away, but he grabbed her by the back of her pants and pulled her towards him. **Id**. at 70. He tore the front of her pants and the left side of her top, exposing her left breast. **Id**. at 71. He pulled her pants down to the top of her thigh and shoved his fingers into her vagina and rectum. **Id**. at 70-71. Golodner was carrying a heavy bag filled with bartending tools from her job. **Id**. at 70. She hit Olivee in the head with the bag, pushed him away, and ran through the back of the restaurant towards the bar. **Id**. at 70, 73. Olivee followed behind her. **Id**. at 73. Golodner pulled her pants up while running, but people in the bar could see that her pants were ripped and that half of her left breast was exposed. **Id**. at 73-74, 77.

When Golodner reached the bar area, she was screaming, "Where's Tomas?" and crying. **Id**. at 73. No Cafe Charbon bartender was working that night, but a person identified only as "Christophe," who Golodner knew previously, asked her what happened. She told him that Olivee had tried to rape her. **Id**. at 74. As Olivee came into the bar area behind her, she picked up a glass bottle and threw it at him. **Id**. at 75. The bottle hit Olivee and cut him. **Id**. Golodner also cut her right thumb. **Id**. at 75, 78-80. Scribot came out of the bathroom and saw Golodner and Olivee covered in blood, and heard Golodner screaming for someone to let her out of the bar. Scribot Dep. at 56-57, 59. Scribot asked what was happening and Christophe, who was attempting to comfort Golodner, told her that Olivee had tried to rape her. **Id**. at 57. In an effort to let Golodner out of the bar as quickly as possible, Scribot unlocked another door because the main entrance was gated. **Id**. at 58.

Coincidentally, there was an off-duty ambulance parked nearby. Golodner Dep. at 78. At Golodner's request, the EMT staff called the police, who came immediately. **Id**. at 79, 81. Golodner reported the attempted rape to the police, and the ambulance took her to Beth Israel Hospital, where she was treated for the wound to her thumb. **Id**. at 99-104. Police questioned and arrested Olivee. **Id**. At 100. As a result of the incident, Golodner received psychological counseling from December 2004 until August 2005. Golodner Dep. at 137.

### III. DISCUSSION

**A. Standard of Review**

Summary judgment is appropriate when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. **D'Amico v. City of New York**, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998). The moving party bears the

initial burden of demonstrating that there are no genuine issues of material fact. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  In evaluating a motion under Rule 56, the court reviews the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any." **Id**. at 322.  The court also reviews "the evidence in the light most favorable to the party against whom summary judgment is sought and [draws] all reasonable inferences in his favor." **L.B. Foster Co. v. America Piles Inc.**, 138 F.3d 81, 87 (2d Cir. 1998).  However, a nonmoving party cannot rely on conclusory allegations or speculation, and "may not rest on the pleadings[,] but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." **Cifarelli v. Village of Babylon**, 93 F.3d 47, 51 (2d Cir. 1996).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986).  Furthermore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Id**. at 249-50 (*internal citations omitted*).

**B. Standard for Liability Under the Theory of** *Respondeat Superior*

An employer can be held vicariously liable for the intentional tort of an employee when that act was committed while the employee was performing his duties for the express benefit of the employer or in furtherance of the employer's business. **Higazy v. Millennium Hotels and Resorts**, 346 F. Supp. 2d 430, 453 (S.D.N.Y. 2004) (*citing* **Davis v. City of New York**, 641 N.Y.S.2d 275, 276 (1st Dep't 1996)).  However, vicarious liability does not attach when the actions of the employee are personally motivated and do not further the employer's business. **E.E.O.C. v. Die Fliedermaus**, 77 F. Supp. 2d 460, 473 (S.D.N.Y. 1999) (*citing* **Tomka v. Seiler**

6

**Corp.**, 66 F.3d 1295, 1318 (2d Cir. 1995)).  Ordinarily, whether the employee was acting within the scope of his employment is heavily fact-dependant, and, therefore, this question is commonly left to the jury to determine.  **Id**. (*citing* **Riviello v. Waldron**, 47 N.Y.2d 297, 302 (1979)).

Under New York law, courts consider five factors when deciding whether an action falls within an employee's scope of employment: "(1) the connection between the time, place and occasion for the act; (2) the history of the relationship between the employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated."  **Higazy**, 346 F. Supp. 2d at 453 (*citing* **Haybeck v. Prodigy Services Co.**, 944 F. Supp. 326, 329 (S.D.N.Y. 1996)).  Generally, New York courts put special emphasis on the fifth factor, whether the employer could reasonably have anticipated the acts of the employee.  **Id**.  The justification is that "if an enterprise can foresee risks as incidental to its business activity, then by continuing to pursue that activity it necessarily assumes those risks and consequences that attach."  **Essig v. United States**, 675 F. Supp. 84, 87 (E.D.N.Y. 1987).  Under this foreseeability standard, although an employer may not have foreseen "the precise act or the exact manner of the injury," if the "general type of conduct may have been reasonably expected," the employer may be held vicariously liable.  **Higazy**, 346 F. Supp. 2d at 453 (*citing* **Riviello**, 47 N.Y.2d at 304).  Therefore, "[w]here the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment."  **Id**. (*citing* **Riviello**, 47 N.Y.2d at 305).  On the other hand, "[b]ecause tortious sexual activity generally is entirely divorced from the nature of an employment position, 'New York courts consistently have held that sexual misconduct and related tortious behavior

7

arise from personal motives and do not further an employer's business, even when committed within the employment context.'" **Adorno v. Correctional Services Corp.**, 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (*citing* **Ross v. Mitsui Fudosan, Inc.**, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)).

## C. Intentional Infliction of Emotional Distress Claim

Golodner brings a claim against defendants for intentional infliction of emotional distress, based on vicarious liability, for injuries she suffered as a result of Olivee's attack. Because Golodner's claim is premised on the theory of vicarious liability, the success of her claim depends on whether Olivee was acting within the scope of his employment. *See* **Higazy**, 346 F. Supp. 2d at 453. If the record does not contain triable issues of fact regarding defendants' vicarious liability, it will be unnecessary for the Court to reach the merits of Golodner's intentional infliction of emotional distress allegation because the sole basis for this claim is the theory of vicarious liability.

It is undisputed that Olivee was employed as a dishwasher at Cafe Charbon at the time he sexually assaulted Golodner, and that the assault took place on the premises of the cafe. It is not clear, however, whether the assault occurred while Olivee was on duty. At the time of the attack, the bar was serving drinks and charging regular prices. There is some evidence in the record to support the contention that Olivee was the DJ that night, and had been given keys to let patrons in and out of the bar. These facts tend toward Golodner in the evaluation of factor number one under New York law. However, other facts weaken the connection between time, place and occasion of the incident. The assault occurred around 4:00 a.m., after the bar and restaurant were both closed to the public and while Scribot's birthday was being celebrated. Olivee had finished

washing dishes several hours before he attacked Golodner, and, like his co-workers, was celebrating Scribot's birthday.

There is no evidence in the record concerning the second factor, the history of the relationship between the employer and employee.  With regard to the third and fourth factors - whether the act is one commonly done by such an employee and the extent of departure from normal methods of performance - sexual assault, and the related intentional infliction of emotional distress, are not acts commonly done by an employee whose duties are to wash dishes, clean and maintain the premises, and open or close the business.  Moreover, under New York law, acts such as the ones Olivee committed arise from personal motives.  *See* **Adorno**, 312 F. Supp. 2d at 517.

Finally, defendants could not have anticipated that Olivee would sexually assault Golodner.  "Employers have been found vicariously liable for an intentional assault where the nature of the employee's duties made it foreseeable that such an assault would take place." **Id**. Here, however, the nature of Olivee's duties as dishwasher did not mandate physical contact with bar or restaurant patrons.  There is nothing in the record indicating that Olivee was acting in furtherance of Cafe Charbon's business or within the context of his employment.  Therefore, the Court finds that no reasonable jury could find that Olivee was acting within the scope of his employment and the defendants' motion for summary judgment on Golodner's claim of intentional infliction of emotional distress is **GRANTED**.

**D. False Imprisonment Claim**

Golodner's second claim is for false imprisonment, also premised on the theory of vicarious liability.  Golodner alleges that she was falsely imprisoned because she felt trapped

when she tried to exit Cafe Charbon and found the doors locked and gated.  Defendants argue, however, that summary judgment should be granted because Golodner has failed to make a prima facie showing of false imprisonment.  A prima facie case of false imprisonment is established "upon a showing that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that she was confined; and (4) the confinement was not otherwise privileged."  **Curley v. AMR Corp.**, 153 F.3d 5, 13 (2d Cir. 1998).  Defendants argue that Golodner's claim cannot survive because there is no indication in the record that Scribot intended to confine Golodner when she locked the doors.  Scribot testified that she had locked the doors after business hours so that she could admit only people she knew into the cafe.  Scribot Dep. at 47-49.  Moreover, when Scribot returned from the bathroom to find Golodner extremely upset, she unlocked the side entrance to allow Golodner to exit as quickly as possible.  **Id**. at 58.  Consistent with Scribot's deposition, Golodner initially testified that she knew from her experience as a bartender that bars locked their doors about 4:00 a.m. "to prevent the people from the outside coming in."  Golodner Dep. at 64-65.  Although Golodner amended her deposition and testified that she felt trapped in Cafe Charbon, the first element of false imprisonment requires Golodner to show that the defendant intended to confine her.  **Arrington v. Liz Claiborne, Inc.**, 260 A.D.2d 267, 267-68 (1st Dep't 1999).  Golodner's subjective feeling of being trapped is insufficient to prove this element, and her false imprisonment claim fails on this element.  **Id**.  Therefore, the Court finds that no reasonable jury could find that Scribot intended to confine Golodner, and defendants' motion for summary judgment on Golodner's claim of false imprisonment is **GRANTED**.

**E.  Negligent Hiring, Retention, Supervision, and Training Claim**

Although an employer may not be found liable for an employee's tortious conduct under a theory of vicarious liability, an employer may nevertheless be held liable under a theory of negligent hiring, retention, training, or supervision.  **Higazy**, 346 F. Supp. 2d at 454.  Proving negligent hiring, retention, supervision, or training requires a plaintiff to show that the employer knew or should have known of the employee's propensity for the conduct which caused the injury.  **Ehrens v. Lutheran Church - Mo. Synod**, 269 F. Supp. 2d 328 (S.D.N.Y. 2003) (*internal quotes omitted*).  An employer's duty to investigate arises when he or she knows of facts about an employee's tortious propensities that would lead a reasonably prudent person to investigate.  **Id**.  Proving negligence in hiring, retention, supervision, and training also requires showing a causal connection between the employer's negligence and the plaintiff's injuries.  *See* **Koran I. v. New York City Board of Edu.**, 256 A.D.2d 189, 192 (1st Dep't 1998).

On the facts set forth in this record, a reasonable jury could not find that defendants "knew or should have known" that Olivee had a "propensity" to commit sexual assault.  *See* **Ehrens**, 269 F. Supp. 2d 328, 334 (S.D.N.Y. 2003).  Golodner alleges that Faure was negligent in hiring Olivee because he did not conduct a background check on Olivee.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem."), at 20.  An employer's failure to perform a routine background check, however, will not serve as a basis for a negligent hiring claim if such a check would not have revealed the propensity for tortuous conduct.  **Koran I.**, 256 A.D.2d at 191-92.  Here, there are no facts in the record to show that a background check of Olivee would have put Faure on notice of Olivee's criminal propensity.  Faure testified that he called Olivee's previous employer to verify whether

he had worked there and the reason he had left. Faure Dep. at 44-45. This reference did not indicate that Olivee had any criminal or violent propensity. **Id**. at 43-45. Since this record does not indicate that Faure had notice of Olivee's propensity prior to or during his employment, a reasonable jury could not find that Faure was negligent in hiring, supervising or retaining him. *See, e.g.,* **Ross**, 2 F. Supp. 2d at 533. Therefore, defendants' motion for summary judgment on Golodner's claim of negligent hiring, supervision, and retention is **GRANTED**.

Finally, Golodner's allegation that defendants are liable for negligent training also fails on this record. Showing employer liability for negligent training requires the plaintiff to demonstrate a causal connection between the alleged negligent training and the injury. *See* **Cardona v. Cruz**, 271 A.D.2d 221, 222 (1st Dep't 2000) (*citing* **Koran I.**, 256 A.D.2d at 192). Since Olivee was acting outside the scope of his employment when he sexually assaulted Golodner, any alleged deficiency in his training as a dishwasher could not have been the proximate cause of Golodner's injuries. Therefore, defendants' motion for summary judgment on Golodner's claim of negligent training is **GRANTED**.

## F.  Remaining Grounds for Summary Judgment

The Court finds it unnecessary to address the additional arguments raised by defendant as no substantial issues are raised therein.

## IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is

**GRANTED**. The case will be dismissed and judgment entered for defendants.

**SO ORDERED this 27th day of September 2007**
**New York, New York**

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge